UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEVEN SORIA,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>RAFEL ZUNGIA, et al.,<br><br>　　　　Defendants. | CASE NO. 1:18-cv-0635-NONE-JLT (PC)<br><br>**FINDINGS AND RECOMMENDATIONS TO DENY DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS**<br><br>(Doc. 22)<br><br>**FOURTEEN-DAY DEADLINE** |

This action proceeds on plaintiff's first amended complaint on an Eighth Amendment medical indifference claim against defendants Lt. A. Herron, Camp Administrator Tammy Allison, Dr. Ruben Morales, and Case Manager Coordinator R. Gonzales. (See Docs. 10, 11.) Plaintiff, who was a federal inmate when he initiated this case[1], brings this civil rights action pursuant to Bivens v. Six Unknown Fed. Narcotics Agents, 403 U.S. 388 (1971). Now pending is a motion for judgment on the pleadings filed by defendants Allison, Gonzalez, and Herron[2] on the ground that plaintiff is attempting to extend Bivens to a new context. Plaintiff has not filed an opposition to this motion, though he did file several dozen pages of exhibits related to his underlying claim. (Doc. 25.)

///

---

[1] Plaintiff has since been released. (See Doc. 5.)

[2] Dr. Morales has not yet appeared despite having been served March 3, 2020. (Doc. 21.)

**A. Plaintiff's Allegations**

Plaintiff suffered an accident on Thursday, January 19, 2017, at Federal Correctional Facility in Mendota, California ("FCI-Mendota"), which severed the tips of his right index and middle fingers. Plaintiff was taken to a private hand specialist clinic where he was informed that the doctor would be unavailable for three hours. Concerned by the delay, plaintiff pleaded with the escorting officers to take him to the hospital. They declined and took plaintiff back to FCI-Mendota instead. Upon his return, plaintiff pleaded with Lt. Herron to be taken to the hospital for emergency reattachment surgery. Lt. Herron denied the request, handcuffed plaintiff, and locked him in the segregated housing unit ("SHU").

The next morning at 8:30 a.m.—over 20 hours since the fingertips were severed—a non-party medical staff member treated plaintiff's injury and gave an injection of pain medication. Plaintiff then pleaded with Dr. Morales to be taken to the hospital for emergency surgery. Dr. Morales made a call, and plaintiff was released from the SHU thirty minutes later.

Upon his release from the SHU, plaintiff asked Camp Administrator Allison when he would be sent out for reattachment surgery. She responded that his fingertips would be discarded since over 11 hours had passed for reattachment, and they could only schedule an appointment for a skin graft procedure at the hand clinic. That appointment would not take place for another five days (on a Tuesday) and was only scheduled at the insistence of plaintiff's wife, who called Camp Administrator Allison. During this call, in which plaintiff also participated, Camp Administrator Allison indicated that plaintiff "needed to be more assertive" and that he "should not have taken no for an answer" when he requested several times to be taken to the hospital. She then said that plaintiff, as an inmate, was not entitled to a second opinion, that his request for one was construed by staff members as a denial of medical attention, and that she requested that plaintiff be placed in the SHU after the accident for monitoring.

On Monday night before his appointment, plaintiff was re-admitted to the SHU where he vomited multiple times due to the side effects of a medicine that was given to him. In this condition, plaintiff was forced to argue with Case Manager Coordinator Gonzales for an hour

2

about whether plaintiff could take his fingertips with him to the surgery. Gonzales told plaintiff that he could not take them with him while plaintiff insisted on taking them. Plaintiff finally relented due to exhaustion. The next day, the hand surgeon stated that he could have used the fingertips for the skin graft procedures and was "astonished" when plaintiff told him he was not allowed to bring them and that they were discarded.

**B. Legal Standards**

Federal Rule of Civil Procedure ("Rule") 12(c) provides "[a]fter the pleadings are closed — but early enough not to delay trial — a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). The issue presented by a Rule 12(c) motion is substantially the same as that posed in a 12(b) motion — whether the factual allegations of the complaint, together with all reasonable inferences, state a plausible claim for relief. See Cafasso v. Gen. Dynamics C4 Sys., 637 F.3d 1047, 1054–1055 (9th Cir. 2011). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007)).

In analyzing a 12(c) motion, the district court "must accept all factual allegations in the complaint as true and construe them in the light most favorable to the non-moving party." Fleming v. Pickard, 581 F.3d 922, 925 (9th Cir. 2009). Nevertheless, a court "need not assume the truth of legal conclusions cast in the form of factual allegations." United States ex rel. Chunie v. Ringrose, 788 F.2d 638, 643 n.2 (9th Cir. 1986). "A judgment on the pleadings is properly granted when, taking all the allegations in the non-moving party's pleadings as true, the moving party is entitled to judgment as a matter of law." Ventress v. Japan Airlines, 603 F.3d 676, 681 (9th Cir. 2010). Courts have the discretion to grant a Rule 12(c) motion with leave to amend, and to simply grant dismissal of the action instead of entry of judgment. See Lonberg v. City of Riverside, 300 F. Supp. 2d 942, 945 (C.D. Cal. 2004); Carmen v. S.F. Unified Sch. Dist., 982 F. Supp. 1396, 1401 (N.D. Cal. 1997).

///

**C. Discussion**

      **a. Bivens Remedy in Limited Contexts**

The Supreme Court first recognized an implied right of action for damages against federal officers in Bivens, 403 U.S. 388. The Court held that damages were recoverable directly under the Fourth Amendment when federal officers arrested and searched the plaintiff without a warrant or probable cause, and when they employed unreasonable force in making the arrest. Id. at 389, 395–96. In the years after Bivens, the Court also recognized implied rights of action for damages under the Fifth and Eighth Amendments. See Davis v. Passman, 442 U.S. 228 (1979) (recognizing a damages remedy for a gender discrimination claim against a United States Congressman under the equal protection component of the Fifth Amendment Due Process Clause); Carlson v. Green, 446 U.S. 14 (1980) (recognizing a damages remedy against federal prison officials for failure to provide adequate medical treatment under the Eighth Amendment's Cruel and Unusual Punishment Clause). Recently, the Ninth Circuit Court of Appeals recognized a Bivens remedy for alleged violations of the First and Fourth Amendment arising from the actions of a federal patrol agent who shoved the plaintiff on his property and who then retaliated against the plaintiff when the latter complained to the agent's supervisor. Boule v. Egbert, --- F.3d ---, 2020 WL 6815073 (9th Cir. Nov. 20, 2020).

The Supreme Court "made clear that expanding the Bivens remedy is now a 'disfavored' judicial activity." Ziglar v. Abbasi, ––– U.S. –––, 137 S. Ct. 1843, 1857 (2017) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 675 (2009)). "This [trend] is in accord with the Court's observation that it has 'consistently refused to extend Bivens to any new context or new category of defendants.'" Id. (quoting Corr. Servs. Corp. v. Malesko, 534 U.S. 61, 68 (2001)).

In Ziglar, the Supreme Court laid out a two-step test for determining when a Bivens claim should be recognized. "[T]he first question a court must ask ... is whether the claim arises in a new Bivens context[.]" Id. at 1864. A case presents a new context if it "is different in a meaningful way from previous Bivens cases decided by th[e Supreme Court]." Id. Ziglar outlined the following non-exhaustive "list of differences that are meaningful enough to make a given

4

context a new one":

> A case might differ in a meaningful way because of [1] the rank of the officers involved; [2] the constitutional right at issue; [3] the generality or specificity of the official action; [4] the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; [5] the statutory or other legal mandate under which the officer was operating; [6] the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or [7] the presence of potential special factors that previous Bivens cases did not consider.

Id. at 1859–60.

If the case presents a new Bivens context, then the court proceeds to step two. At step two, a court may extend Bivens in a new context only if two conditions are met. First, "the plaintiff must not have any other adequate alternative remedy." Rodriguez, 899 F.3d at 738. Second, "there cannot be any 'special factors' that lead [the court] to believe that Congress, instead of the courts, should be the one to authorize a suit for money damages." Id. While the Supreme Court has yet to define the term, "special factors," it has explained that "the inquiry must concentrate on whether the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed." Ziglar, 137 S. Ct. at 1857–58. Therefore, "to be a 'special factor counselling hesitation,' a factor must cause a court to hesitate before answering that question in the affirmative." Id. at 1858.

### b. Analysis

In Carlson, the Supreme Court held that Eighth Amendment medical indifference claims can be brought pursuant to Bivens notwithstanding the availability of a claim under the Federal Tort Claims Act. Even so, defendants argue that plaintiff's medical indifference claim here, which is premised on the defendants' alleged deliberate indifference to his severed fingers, is a "new context" to which Bivens should not be extended.

Defendants' argument requires a detailed review of the factual circumstances presented in Carlson. See Green v. Carlson, 581 F.2d 669, 671 (7th Cir. 1978). In that case, suit was brought by the mother of a deceased federal prisoner against several federal prison officials for, *inter alia*, violations of his Eighth Amendment rights. The prisoner, Joseph Jones, Jr., was diagnosed a chronic

asthmatic in 1972 when he first entered the federal prison system. In 1975, his asthmatic condition required hospitalization. Upon his discharge from the hospital, the treating physician recommended that he be transferred to a penitentiary in a more favorable climate. However, Jones was returned to his original prison where he was not given proper medication and did not receive the steroid treatments ordered by the physician. Shortly thereafter, he was admitted to the prison hospital in serious condition with an asthmatic attack. Since no doctor was on duty and none was called, Jones was not seen for eight hours. During that time, he became more agitated and his breathing became more difficult. Despite the seriousness of his condition, a nurse left him alone to dispense medication elsewhere. When the nurse returned, he brought a respirator that he attempted to use even though he had been notified just two weeks earlier that it was broken. When Jones said it was making his breathing worse, the nurse administered two injections of Thorazine, a drug contraindicated for one suffering an asthmatic attack. A half-hour after the second injection, Jones suffered a respiratory arrest. The nurse and an officer brought emergency equipment to administer an electric jolt, but neither man knew how to operate the machine. Jones was then taken to a hospital where he was pronounced dead on arrival.

Defendants distinguish Carlson from the facts of this case. They contend that, in Carlson, prison officials were alleged to have failed to provide life-saving medical care to an inmate with asthma, resulting in his death. There, "the inmate died; there was a medical emergency; the alleged harm had a predictable result, death; and officials allegedly responded with medical equipment that they knew was malfunctioning." Defs.' Mot. J. on the Pleadings at 6-7. By contrast, this case concerns a claim that defendants distill to a mere "finger injury."

There can be no dispute that Carlson arose in a context involving the wholly insufficient provision of medical care to an asthmatic prisoner, resulting in his death. Whether Carlson can be construed as extending Bivens to *all* claims of medical indifference is an open question. Some courts have indicated a willingness to extend Bivens to other claims for denial of medical care. See, e.g., Van Gessel v. Moore, 2020 WL 905216, at *8 (E.D. Cal. Feb. 25, 2020) (concluding that plaintiff's claim that he was not provided pain medication after his foot was severely burned

1   with hot water "does not present a new context from the previously established claim in
2   Carlson"); Lee v. Matevousian, 2018 WL 5603593, at *6-*7 (E.D. Cal. Oct. 26, 2018) (screening
3   plaintiff's medical indifference claim after determining that Carlson "extended Bivens to a claim
4   arising from the Cruel and Unusual Punishments Clause of the Eighth Amendment based on the
5   failure to provide adequate medical treatment"); Hunt v. Matevousian, 336 F. Supp. 3d 1159,
6   1169-70 (E.D. Cal. June 15, 2018), report and recommendation adopted, 336 F. Supp. 3d 1159
7   (E.D. Cal. Oct. 1, 2018) (finding that a plaintiff alleging a delay in receiving an x-ray may sue
8   pursuant to Bivens, although the allegations there failed to state a valid Eighth Amendment
9   claim); Self v. Warden, MCC, 2019 WL 497731, at *4 & n.4 (S.D. Cal. Feb. 8, 2019) (presuming
10  for purposes of screening, that inadequate medical care claims arising before conviction and
11  sentence, are not "different in a meaningful way" from that found in Carlson).

12        Other courts have recognized that different medical allegations present a new context
13  from Carlson and have refused to extend Bivens. See, e.g., Martinez. V. United States Bureau of
14  Prisons, 2019 WL 5432052 (C.D. Cal. Aug. 20, 2019) (declining to imply a Bivens remedy for
15  claim that inmate was denied medical care for his hypertension); Gonzalez v. Hasty, 269 F. Supp.
16  3d 45, 65 (E.D.N.Y. 2017) (declining to imply a Bivens remedy after finding that the medical
17  claim allegations—involving the denial of dental hygiene supplies and failure to receive shoes
18  with adequate muscle support—were so different from the facts in Carlson that the context was
19  new); Tillitz v. Jones, 2004 WL 2110709, at *3 (D. Or. Sep. 22, 2004) (declining to allow
20  plaintiff's Bivens claim to proceed upon concluding that Congress provided a substituted remedy
21  for constitutionally deficient dental care in the form of the Public Health Service Act); Seminario
22  Navarrete v. Vanyur, 110 F. Supp. 2d 605 (N.D. Ohio Aug. 18, 2000) (holding that the
23  availability of the FTCA prohibited the expansion of Bivens to a claim for delay in providing
24  dental and medical treatment).

25        The differences highlighted by the defendants between this case and Carlson are not
26  meaningful differences that would lead the Court to conclude that this is a new context. For
27  example, it is true that the treatment that the Carlson prisoner received was so inadequate that it
28

resulted in his death. Here, the allegedly inadequate treatment plaintiff received resulted in the inability to, first, re-attach two severed fingers and then, second, to use the skin on those fingers for grafting purposes. It also amounted to several days of pain and suffering without adequate pain medication and medical care for his injuries. The disfigurement to plaintiff's dominant hand is thus a sufficiently permanent harm to place the allegations here in the same realm as those alleged in Carlson.

Furthermore, the Carlson defendants are alleged to have treated plaintiff's asthma with a respirator that they knew didn't work, provided medication contraindicated for plaintiff's condition, and attempted to revive him with equipment that they did not know how to use. In other words, one can imagine few, if any, circumstances where their treatment of plaintiff was appropriate. Similarly, the allegations here can suggest no plausible explanation for the defendants' refusal to route plaintiff to a hospital for emergency reattachment surgery despite plaintiff's pleas and knowing that time is of the essence, to handcuff him and place him in the SHU in lieu of providing adequate medical care, and to direct that the severed fingers be discarded instead of taken to a grafting appointment. Therefore, the Court concludes that plaintiff's Eighth Amendment medical indifference claim does not arise in a new context. For this reason, the Court need not proceed to the second step of the analysis.

**D. Conclusion**

Based on the foregoing, the Court **RECOMMENDS** that defendants' motion for judgment on the pleadings (Doc. 22) be **DENIED**.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these Findings and Recommendations, the parties may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."

///

///

1 | The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **December 2, 2020**         **/s/ Jennifer L. Thurston**
UNITED STATES MAGISTRATE JUDGE